**Alfred A. Day***
**William J. Durkin***
**Jeffrey S. Olshan****
**Dahlia Rin***
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**Boston Regional Office**
**33 Arch Street, 24th Floor**
**Boston, MA 02110**
**617-573-8955 (Olshan direct)**
**OlshanJ@sec.gov**

***Not admitted in the Southern District of New York**
****Motion to appear *pro hac vice* pending**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br><br>         **Plaintiff,** <br><br>    v. <br><br> **CHARLES J. COLE,** <br> **TORBEN M. WELCH,** <br> **BEACON HEART, LLC,** <br> **HEART OF HUMANITY, LLC, and** <br> **AVRANOC, LLC,** <br><br>         **Defendants,** <br><br> **and** <br><br> **THE INDIGENOUS NATIONS' BANK,** <br> **DEREK A. THIESS, and** <br> **BARRY R. TAYLOR,** <br><br>         **Relief Defendants.** | <u>**COMPLAINT**</u> <br><br> **1:26-cv-4945** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff, the United States Securities and Exchange Commission (the "Commission"), for

its Complaint against Defendants Charles J. Cole ("Cole"), Torben M. Welch ("Welch"), Beacon

Heart, LLC ("Beacon Heart"), Heart of Humanity, LLC ("Heart of Humanity"), and Avranoc,

LLC ("Avranoc") (collectively, "Defendants") and Relief Defendants The indigenous Nations' Bank ("TiNB"), Derek A. Thiess ("Thiess"), and Barry R. Taylor ("Taylor") (collectively, "Relief Defendants"), alleges as follows:

## SUMMARY

1. This is a securities fraud case involving a scheme perpetrated by Cole and his attorney, Welch, to fraudulently amass hundreds of millions of shares in a private company— Infinite Reality, Inc., now known as Napster Corp. ("Infinite Reality")—in exchange for falsely promising to invest up to $3.36 billion in Infinite Reality.  Cole, with Welch's assistance, then used the fraudulently obtained shares in Infinite Reality to secure a $1 million loan from a private third-party lender (the "Lending Institution") that he never repaid.

2. As part of the fraud, Cole and Welch falsely told Infinite Reality that Cole and/or Avranoc, a limited liability company Cole owned, had at least $55 billion in cash—a sum that would make Cole one of the wealthiest people in the world.  But that money did not exist. Instead, Cole and Welch used fabricated documents and repeatedly lied to Infinite Reality and others about Cole's wealth and capacity to fund enormous investments.

3. Based on Cole's numerous false representations to Infinite Reality, repeated and amplified by Welch, Infinite Reality issued over 239 million shares to Cole and two shell entities that Cole controlled, Beacon Heart and Heart of Humanity, in late 2024 and early 2025.  This amounted to approximately 25% of Infinite Reality's outstanding shares.  To date, Infinite Reality has never received any money from Cole despite his promise to invest $3.36 billion.

4. After fraudulently obtaining Infinite Reality's stock, in May 2025, Cole pledged nearly 45 million shares as collateral to obtain a $1 million loan from the Lending Institution, and to date has not repaid any portion of the loan, which is currently in default.  Welch was an essential participant in obtaining the $1 million loan: Welch drafted the loan agreement between

Cole and the Lending Institution, purported to verify Cole's assets with forged documents, and provided misleading and false assurances to the Lending Institution through email correspondence and letters that he authored.

5.    Cole benefitted from his fraud by retaining at least $552,800 of the $1 million loan described above, while the Relief Defendants received a portion of the remainder.

## VIOLATIONS

6.    As a result of the foregoing conduct and as alleged further herein, Cole violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; Beacon Heart, Heart of Humanity, and Avranoc violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], and Rules 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a), (c)]; and Welch violated Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (3)], Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and aided and abetted Cole's violation of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

7.    Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

8.    The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) and 20(d) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

9.    The Commission seeks a final judgment: (i) permanently enjoining Defendants from violating the federal securities laws and rules this Complaint alleges they have violated;

3

(ii) enjoining Cole from directly or indirectly, including, but not limited to, through any entity owned or controlled by Cole, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Cole from purchasing or selling securities listed on a national securities exchange for his own personal account; (iii) ordering Cole, Beacon Heart, Heart of Humanity, and Avranoc to disgorge ill-gotten gains they received as a result of the unlawful conduct alleged in this Complaint, together with prejudgment interest; (iv) ordering Cole and Welch to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)]; (v) ordering Relief Defendants to pay, with prejudgment interest, all ill-gotten gains by which they were unjustly enriched; and (vi) ordering such other relief as the Court may deem appropriate.

### JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa], and 28 U.S.C. § 1331.

11.     Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

12.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the acts, practices, and transactions and courses of business alleged in this Complaint occurred within this district, including those set forth in Paragraphs 23, 57, and 59.

## DEFENDANTS

13.    **Cole**, age 57, resides in Mooresville, North Carolina.

14.    **Welch**, age 51, is an attorney residing in Draper, Utah.  He is licensed to practice law in Utah, Colorado, and New York.  He is a partner at a law firm with various offices throughout the United States and is the head of the law firm's Utah office.

15.    **Beacon Heart** is a Wyoming limited liability company.  Beacon Heart was formed on September 24, 2024, with Cole as its sole member.

16.    **Heart of Humanity** is a Wyoming limited liability company.  Heart of Humanity was formed on September 24, 2024, with Cole as its sole member.

17.    **Avranoc** is a Delaware limited liability company.  Avranoc was formed on May 23, 2022, with Cole as its sole member.

## RELIEF DEFENDANTS

18.    **TiNB** describes itself as an international bank organized as a "sovereign confederated financial institution" under the laws of the KiKiallus Nation, who describe themselves as "nomadic sovereign people indigenous to the Pacific North West."

19.    **Thiess**, age 45, resides in Fort Ripley, Minnesota, and purports to be the Chief Managing Director of TiNB.

20.    **Taylor**, age 63, resides in Norfolk, Virginia, and purports to be both the Legal Director of TiNB and the Attorney General of the KiKiallus Nation.

## OTHER RELEVANT ENTITIES

21.    **Infinite Reality** (now known as Napster) is a Delaware corporation with its principal place of business in Boca Raton, Florida.  Infinite Reality has approximately 1,700 investors, with multiple investors residing in this district.

5

22.     The **Lending Institution** is a Kansas corporation with its principal place of business in Leawood, Kansas.

## THE FRAUDULENT SCHEME

### A.     Origins of the Scheme and Cole's Purported Wealth

23.     In late August 2024, Cole was introduced to Infinite Reality through a New York-based broker that had an existing relationship with Infinite Reality.  Infinite Reality was told that Cole could assist with its efforts to sell a bond that it had obtained (and physically took possession of within this district) from another investor associated with Cole.  Shortly after his introduction to the company, Cole offered to invest billions of dollars in Infinite Reality.

24.     Specifically, in September 2024, Cole, Beacon Heart, and Heart of Humanity entered into subscription agreements to acquire shares of Infinite Reality's stock in exchange for $500 million of Cole's own funds, plus $350 million in cash from Beacon Heart, and a $2.5 billion bond allegedly held by Heart of Humanity.  Cole had formed both entities days before entering into the agreements with Infinite Reality, and Cole signed the Beacon Heart and Heart of Humanity subscription agreements on behalf of those entities.  Neither entity had any operations, and both entities appear to have been formed solely for the purpose of executing agreements with and receiving shares from Infinite Reality.  While the terms of the "deal" went through several iterations, the basic tenets remained the same: Cole and his entities would invest billions of dollars in exchange for hundreds of millions of shares.  In fact, neither Cole nor his companies ever had possession of or access to the large sums of money they claimed they would invest in Infinite Reality.

25.     As part of the fraudulent scheme, Cole and Welch had to convince Infinite Reality that Cole had sufficient funds to make the investments.  To achieve this, Cole and Welch

provided fabricated and misleading documents to Infinite Reality that purported to validate Cole's non-existent assets and the sources of his purported funds.

26.    For example, on September 20, 2024, through an associate of Cole's broker, Infinite Reality received a letter dated that same day claiming that Cole had 49 billion Euro available to him in "immediately spendable cash" at what purported to be an asset management firm in Sweden.  That letter, and those funds, were a fabrication: Cole participated in the creation of the letter earlier that day.

27.    Infinite Reality received additional fabricated and misleading documents in November 2024, when it received a letter signed by Welch dated June 22, 2024, and a July 2024 video featuring Welch that purported to validate funds at Cole's disposal.

28.    June 22, 2024 letter.  Welch prepared a letter on his law firm's letterhead asserting that Cole, through Avranoc, controlled "approximately $55 billion."  Welch attached to his letter "supporting documentation."

29.    In the June 22, 2024 letter, Welch represented that he had validated and traced the $55 billion and asserted that the funds were derived from the sale of what the attached documents describe as a $459.5 billion collection of "Master Trust Indenture" bonds.  However, the "supporting documentation" was fabricated, and none of the institutions identified appear to be legitimate.

30.    For example, Welch attached a letter from the "Special Intelligence Service," which does not appear to be a real entity; the letter lists an address that in fact belongs to a large Masonic temple in Washington, DC.  This letter purported to trace the source of funds later transferred to an account controlled by Cole, through Avranoc.

31.     Cole knew or recklessly disregarded that the representations in the June 22, 2024 letter and documentation attached thereto were false, as he in fact had few assets—certainly not assets worth tens of billions of dollars—to his name.

32.     Welch knew, or was reckless in not knowing, that these representations were false.  In signing the letter, Welch did not verify the accuracy of the financial statements, account information, or other sources he claimed to have relied upon, even though Cole's purported extraordinary wealth depended on a complex web of foreign institutions and unconventional transactions.

33.     July 30, 2024 "Titan Financial" video.  At Cole's direction, Welch recorded a video of himself logging into a website for "Titan Financial" to substantiate Cole's wealth.  The video shows Welch saying there was a "balance of 55 billion dollars" in an account in the name of Charles Cole and Avranoc and displays a "Current Balance" of "USD 55,000,000,000.00 available."  Welch's video was misleading; the "Titan Financial" website he visited was not associated with any legitimate financial institution, and the account balance he displayed was fictitious.

34.     At the time he recorded the video, Welch knew, or was reckless in not knowing, that Cole did not own or control an account at Titan Financial holding $55 billion in cash. Welch later claimed in sworn investigative testimony before Commission staff that the figure displayed in his video was not a cash balance; Welch therefore knew that the video was misleading at the time he created it because a $55 billion balance was shown in the purported account without indicating that the balance was not cash.  Likewise, Welch stated in the video that the account "shows a current balance of 55 billion dollars" without indicating that this was not a cash balance.

35.     Welch's supposed validation of Cole's wealth and status of funds transfers, and Welch's imprimatur as Cole's attorney, were central to Infinite Reality's decision to issue the shares to Cole, Beacon Heart, and Heart of Humanity as set forth in Paragraph 42.

**B.      Cole's Purported Transfer of Investment Funds to a Malaysian Investment Bank**

36.     Cole (and his entities) did not timely deliver the funds under the subscription agreements executed in September 2024, so Infinite Reality escalated its efforts to compel Cole to perform his obligations.

37.     In response, in November 2024, Cole told Infinite Reality that he had over $11 billion in an account at a Malaysian investment bank (the "Malaysian Investment Bank").  Cole further represented that he intended to use those funds to invest in Infinite Reality, but that the Malaysian Investment Bank was unable to make an international transfer to Infinite Reality's domestic bank account.  Instead, Cole told Infinite Reality that he would help open an account at the Malaysian Investment Bank in Infinite Reality's name and then transfer the money directly to that account.

38.     Cole's representations regarding his assets at the Malaysian Investment Bank were false.  Although the Malaysian Investment Bank exists, neither Cole nor any person or entity he controlled ever had an account there.  Infinite Reality also never had an account there.  Instead, Cole impersonated the Malaysian Investment Bank with fake websites, fake email addresses purporting to be associated with the Malaysian Investment Bank, and forged "bank confirmation letters."

39.     For example, on November 9, 2024, Cole, through his broker, sent Infinite Reality a letter appearing to be on the letterhead of the Malaysian Investment Bank, which stated that

9

Cole was both a client of the Malaysian Investment Bank and had over $11 billion in cash available to him.  The letter was a fabrication that Cole created earlier that day.

40.    Cole knew or recklessly disregarded that the representations regarding his assets at the Malaysian Investment Bank were false, as he never had an account at the Malaysian Investment Bank, much less $11 billion in any account or combination of accounts, at any time.

41.    On November 20, 2024, Infinite Reality received an email that appeared to come from the Malaysian Investment Bank.  The email welcomed Infinite Reality as a client of the Malaysian Investment Bank, and contained a link to a website login page, a username, and the request to reply to the email to receive a password.  However, the site was not the Malaysian Investment Bank's genuine website, but a fraudulent imitation.  The welcome email did not come from the Malaysian Investment Bank; Cole wrote it earlier that day, and it was sent to Infinite Reality from an email address that was not associated with the Malaysian Investment Bank.  Infinite Reality was never a client of the Malaysian Investment Bank.

**C.    Cole and His Entities Obtain Infinite Reality Shares for the First Time**

42.    By mid-December 2024, Infinite Reality had received Welch's June 22, 2024 letter, Welch's July 30, 2024 video, and other false and misleading communications and documents from Cole and Welch over a period of months.  These misrepresentations culminated in false assurances that Cole had transferred $860 million into Infinite Reality's non-existent account at the Malaysian Investment Bank, that the rest of the money Cole promised to invest was en route to that account, and that Welch would shortly provide Infinite Reality with a letter confirming these transfers in writing.  Based on these false assurances, and the months of false and misleading communications from Cole and Welch that preceded them, Infinite Reality issued Cole and his entities 187,932,429 shares of stock in mid-December 2024: 44,824,142 shares to Cole, 44,871,794 shares to Beacon Heart, and 98,236,493 shares to Heart of Humanity.

10

These numbers of shares collectively represented over 20% of Infinite Reality's outstanding shares at that time.

43.     Infinite Reality received a letter from Welch, dated December 18, 2024, that was written on behalf of Cole and Avranoc with the subject "Infinite Reality Inc. Deposits."  In the letter, Welch falsely confirmed that prior to December 17, 2024, Cole and Avranoc caused $860 million to be deposited in Infinite Reality's (non-existent) account at the Malaysian Investment Bank.  Welch further represented, also falsely, that Cole had directed an additional $1.64 billion to be deposited in Infinite Reality's purported account at the Malaysian Investment Bank, for a total of $2.5 billion.  The letter further falsely stated that Cole "agreed to transfer an additional $860 million to [Infinite Reality's] designated accounts in the United States, specifically JP Morgan Chase or Bank of America."

44.     None of this was true.  Welch knew, or was reckless in not knowing, that neither Cole nor Infinite Reality had any account at the Malaysian Investment Bank.  In fact, Welch had never communicated with anyone at the Malaysian Investment Bank and did not independently verify that Cole's and Infinite Reality's accounts existed or that Cole's purported transfers were in process.  Indeed, he could not have, because the money was not real.

45.     Infinite Reality's issuance of stock to Cole, Beacon Heart, and Heart of Humanity was the culmination of a fraudulent scheme by Cole, Welch, and Cole's entities intended to induce Infinite Reality to believe that Cole possessed considerable wealth, that an account had been opened for Infinite Reality at the Malaysian Investment Bank, and that vast sums of money had been transferred into that account.  In reality, it was all a sham.

**D.     Cole and Welch Continue to Deceive Infinite Reality to Obtain More Shares**

46.     The scheme did not end there: Cole and Welch continued to make false statements to Infinite Reality in order to obtain more shares of its stock.

11

47.     <u>February 5, 2025 email purporting to verify funds transfers.</u>  On February 5, 2025, Cole emailed Infinite Reality, copying Welch.  In that message, Cole falsely said, among other things, that he had made three transfers to an escrow account at Welch's law firm.  He further claimed that he had transferred additional funds to several domestic banks that "exceed the total investment in [Infinite Reality] in the aggregate."  Welch replied all to the message, "This is correct."

48.     Welch knew, or was reckless in not knowing, that his verification of Cole's representations was false.  Welch did not independently confirm that Cole had in fact made the transfers to domestic banks, so he had no basis to say that it was "correct" that those transfers had occurred.  Regarding the three purported transfers to Welch's escrow account, Welch was in the best position to know whether Cole sent funds to the account because Welch, and/or his firm, controlled it.  Cole never transferred funds to Welch's escrow account at any time, so Welch knew or was reckless in not knowing that Cole's representation was false.

49.     <u>February 25, 2025 email confirming transfers to Infinite Reality.</u>  On February 25, 2025, Cole asked Welch, in an email to Infinite Reality, to confirm that he had $3 billion "in various stages of transfer" with $860 million slated for Infinite Reality.  Welch replied, "yes, I can confirm that the amount of funds Charles [Cole] mentioned below is in process—we are waiting on the formal confirmation/documentation from the institutions and will forward immediately upon receipt."

50.     No transfers were in process and none were ever made.  Cole knew this, because he had no such funds to transfer.  Welch knew, or was reckless in not knowing, that all of the purported transactions were a sham.  Indeed, Welch had to have known that his statement that he "confirmed the amount of funds" was false because there were no such funds to "confirm."

12

51.    After the promised $860 million transfer to Infinite Reality's domestic bank accounts did not materialize, Infinite Reality agreed to have the purported $860 million transferred to its non-existent account at the Malaysian Investment Bank.

52.    Cole told Infinite Reality he made this transfer on March 10, 2025, and showed Infinite Reality a screenshot of the Malaysian Investment Bank account, purportedly in Infinite Reality's name, reflecting a deposit transaction of $860 million.  The screenshot depicts the same fraudulent imitation of the Malaysian Investment Bank website that Cole had previously utilized when purporting to assist Infinite Reality in opening an account at the Malaysian Investment Bank.  Cole knew or recklessly disregarded that this transfer was a sham because he had no such funds to transfer, and because this screenshot depicted the same fake website that he had previously utilized in his scheme to obtain Infinite Reality securities.

53.    Heart of Humanity then executed another subscription agreement with Infinite Reality, effective March 10, 2025, to purchase another 51,212,973 shares.  Cole signed the agreement on behalf of Heart of Humanity.  In April 2025, Infinite Reality issued Heart of Humanity the additional 51,212,973 shares under that agreement, bringing Cole's total holdings to 239,145,402 shares.  The amount represented approximately 25% of Infinite Reality's then-outstanding shares.

54.    To date, Infinite Reality has not received any funds from Cole or his entities.

**E.    Cole Obtains Cash Using His Fraudulently Obtained Infinite Reality Shares**

55.    In May 2025, Cole obtained $1 million from the Lending Institution. Specifically, Cole pledged nearly 45 million of his fraudulently obtained Infinite Reality shares as collateral for a $1 million loan.

56.    Welch represented Cole in the transaction, including drafting the lending agreement.  Cole and Welch provided the Lending Institution with many of the same fabricated

13

documents they had given to Infinite Reality, which purported to demonstrate Cole's wealth and ability to repay the loan.

57.    The Lending Institution wired $1 million to an escrow account held by Welch's law firm.  Welch then disbursed the funds, at Cole's direction, as follows: $552,800 to Cole ($6,500 of which Cole then transferred to Avranoc), $22,200 to Taylor, and $200,000 to a crypto-asset platform to be converted to crypto assets and deposited into an account controlled by Thiess in the name of TiNB.

58.    To the Commission's knowledge, none of TiNB, Thiess, or Taylor provided any goods or legitimate services in exchange for the cash they received or otherwise have any legitimate claim to the money.

59.    Welch and Cole made and caused the wire transfers to Cole and to the crypto-asset platform identified in Paragraph 57 to be made using the means or instrumentalities of communication in interstate commerce, and the transfers occurred through and to this district through the Federal Reserve Bank of New York's Fedwire service; the transfers to Cole's account occurred through his correspondent bank, which is located in this district, and the transfers to the crypto-asset platform for the benefit of TiNB's account controlled by Thiess occurred through the same correspondent bank in this district utilized by Cole.

60.    Cole defaulted on the loan and made no payments.

## FIRST CLAIM FOR RELIEF

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by Cole and Welch)

61.    Paragraphs 1 through 60 above are re-alleged and incorporated by reference as if fully set forth here.

62.    Through the conduct described above, Cole and Welch, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of

interstate commerce or of the mails, or of any facility of any national securities exchange, knowingly or recklessly, (i) employed one or more devices, schemes, or artifices to defraud; (ii) made one or more untrue statements of a material fact or omitted to state one or more material fact(s) necessary to make the statements made, in light of the circumstances in which they were made, not misleading; or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

63.     Through the conduct described above, Cole and Welch violated, and will continue to violate unless enjoined, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] thereunder.

## SECOND CLAIM FOR RELIEF
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder by Beacon Heart, Heart of Humanity, and Avranoc)**

64.     Paragraphs 1 through 60 above are re-alleged and incorporated by reference as if fully set forth here.

65.     Through the conduct described above, Beacon Heart, Heart of Humanity, and Avranoc directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, knowingly or recklessly, (i) employed one or more devices, schemes, or artifices to defraud; or (ii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

66.     Through the conduct described above, Beacon Heart, Heart of Humanity violated, and will continue to violate unless enjoined, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5(a) and (c)] thereunder.

15

## THIRD CLAIM FOR RELIEF

### (Violations of Section 17(a) of the Securities Act by Cole)

67.     Paragraphs 1 through 60 above are re-alleged and incorporated by reference as fully set forth here.

68.     Through the conduct described above, Cole, in the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, (i) knowingly or recklessly employed one or more devices, schemes, or artifices to defraud; (ii) knowingly, recklessly, or negligently obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) knowingly, recklessly, or negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

69.     Through the conduct described above, Cole violated, and will continue to violate unless enjoined, Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

## FOURTH CLAIM FOR RELIEF

### (Violations of Section 17(a)(1) and (3) of the Securities Act by Welch)

70.     Paragraphs 1 through 60 above are re-alleged and incorporated by reference as fully set forth here.

71.     Through the conduct described above, Welch, in the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, (i) knowingly or recklessly employed one or more devices, schemes, or artifices to defraud; or (ii) knowingly, recklessly, or negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

16

72.     Through the conduct described above, Welch violated, and will continue to violate unless enjoined, Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. §77q(a)(1) and (3)].

### FIFTH CLAIM FOR RELIEF
**(Aiding and Abetting Violations of Section 17(a)(2) of the Securities Act by Welch)**

73.     Paragraphs 1 through 60 above are re-alleged and incorporated by reference as fully set forth here.

74.     As alleged above, Cole violated Securities Act Section 17(a)(2) [15 U.S.C. § 77q(a)(2)].

75.     Welch knowingly or recklessly provided substantial assistance to Cole with respect to its violations of Securities Act Section 17(a)(2) [15 U.S.C. § 77q(a)(2)].

76.     By reason of the foregoing, Welch is liable pursuant to Securities Act Section 15(b) [15 U.S.C. § 77o(b)] for aiding and abetting Cole's violations of Securities Act Section 17(a)(2) [15 U.S.C. § 77q(a)(2)] and, unless enjoined, Welch will again aid and abet these violations.

### SIXTH CLAIM FOR RELIEF
**(Unjust Enrichment Against Relief Defendants)**

77.     Paragraphs 1 through 60 above are re-alleged and incorporated by reference as if fully set forth here.

78.     Each Relief Defendant received ill-gotten gains that are proceeds of the unlawful activity alleged above.

79.     Each Relief Defendant has no legitimate claim to these ill-gotten gains.

80.     Each Relief Defendant obtained the funds under circumstances in which it is not just, equitable, or conscionable for them to retain the funds.

81.     Each Relief Defendant has therefore been unjustly enriched.

17

**PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

A.      Permanently restraining and enjoining Cole and those persons in active concert or participation with him from violating, directly or indirectly, Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

B.      Permanently restraining and enjoining Beacon Heart, Heart of Humanity and Avranoc, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them from violating, directly or indirectly, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

C.      Permanently restraining and enjoining Welch and those persons in active concert or participation with him from violating, or aiding and abetting violations of, directly or indirectly, Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

D.      Permanently restraining and enjoining Cole from directly or indirectly, including, but not limited to, through an entity owned or controlled by Cole, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Cole from purchasing or selling securities listed on a national securities exchange for his own personal account;

E.      Ordering Cole, Beacon Heart, Heart of Humanity, and Avranoc to disgorge, on a joint and several basis, all ill-gotten gains they received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

F.	Ordering Cole and Welch to pay civil monetary penalties under Section 20(d) of

the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C.

§78u(d)(3)];

G.	Ordering Relief Defendants to pay, with prejudgment interest, all ill-gotten gains

by which they were unjustly enriched, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and

21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; and

H.	Granting such other relief as the Court may deem appropriate.

### JURY DEMAND

The Commission demands a trial by jury.


DATED: June 11, 2026	Respectfully submitted,


/s/ *Jeffrey S. Olshan*
Alfred A. Day, MA BBO No. 654436*
William J. Durkin, MA BBO No. 678403*
Jeffrey S. Olshan, MA BBO No. 693337**
Dahlia Rin, MA BBO No. 674137*
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
Phone: 617-573-8955 (Olshan direct)
Email: OlshanJ@sec.gov
Fax: 617-573-4590

*Not admitted in the Southern District of New York
**Motion to appear *pro hac vice* pending